IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Bronwyn Heidi Ellen Roberts, ) | C/A No. 0:13-68-RMG-PJG |
| Plaintiff, ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| Carolyn W. Colvin, Acting Commissioner ) of Social Security,[1] ) | |
| Defendant. ) | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 DSC. The plaintiff, Bronwyn Heidi Ellen Roberts ("Roberts"), brought this action pursuant to 42 U.S.C. § 1383(c)(3) to obtain judicial review of a final decision of the defendant, Acting Commissioner of Social Security ("Commissioner"), denying her claims for Supplemental Security Income ("SSI"). Having carefully considered the parties' submissions and the applicable law, the court concludes that this matter should be remanded for further consideration as explained below.

### ADMINISTRATIVE PROCEEDINGS

In May 2010, Roberts applied for SSI, alleging disability beginning December 1, 2007. Roberts's application was denied initially and on reconsideration and she requested a hearing before an administrative law judge ("ALJ"). A hearing was held on October 28, 2011 at which Roberts appeared and testified and was represented by Peter D. Brown, Esquire. The ALJ issued a decision November 17, 2011 finding that Roberts was not disabled. (Tr. 11-18.)

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Carolyn W. Colvin is substituted for Michael J. Astrue as the named defendant because she became the Acting Commissioner of Social Security on February 14, 2013.

Page 1 of 11



Roberts was born in 1967 and was forty-two years old on the date her application was filed. (Tr. 134.) She has an eleventh-grade education and has past relevant work experience as an inventory specialist and a pharmacy tech. (Tr. 26, 128.) In her application, Roberts alleges disability due to a left shoulder injury and nerve damage in her neck. (Tr. 127.)

The ALJ made the following findings and conclusions:

1. The claimant has not engaged in substantial gainful activity since May 19, 2010, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: cervical degenerative disc disease and stenosis, and fibromyalgia (20 CFR 416.920(c)).

   * * *

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

   * * *

4. . . . [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a). Specifically, the claimant is able to lift and carry up to 10 pounds occasionally and lesser amounts frequently, sit for six hours in an eight-hour day, and stand and walk occasionally. However, the claimant can only perform occasional overhead lifting.

   * * *

5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

   * * *

6. The claimant was born . . . [in] 1967 and was 42 years old, which is defined as a younger individual age 18-44, on the date the application was filed (20 CFR 416.963).

7. The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

   * * *

8. Transferability of job skills is material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the



   national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

* * *

10. The claimant has not been under a disability, as defined in the Social Security Act, since May 19, 2010, the date the application was filed (20 CFR 416.920(g)).

(Tr. 13-18.)

Roberts filed a request for Appeals Council review which was denied on November 2, 2012, making the decision of the ALJ the final action of the Commissioner. (Tr. 1-3.) This action followed.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 1382c(a)(3)(H)(I), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations require the ALJ to consider, in sequence:

(1) whether the claimant is engaged in substantial gainful activity;

(2) whether the claimant has a "severe" impairment;

(3) whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4) whether the claimant can perform her past relevant work; and

(5) whether the claimant's impairments prevent her from doing any other kind of work.

20 C.F.R. § 416.920(a)(4).[2] If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. § 1382c(a)(3)(A)-(B); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

**STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more

---

[2] The court observes that effective August 24, 2012, ALJs may engage in an expedited process which permits the ALJs to bypass the fourth step of the sequential process under certain circumstances. 20 C.F.R. § 416.920(h).



than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.

## ISSUES

Roberts raises the following issues for this judicial review:

I.  [The ALJ] failed to consider the combined impact of the Plaintiff's multiple impairments; and

II.  [The ALJ] performed a flawed Step Four analysis; and

III.  [The ALJ] failed to account for all documented limitations in the RFC determination.

(Pl.'s Br., ECF No. 16.)

## DISCUSSION

Roberts presents several issues on appeal. For the reasons that follow, the court agrees that remand is warranted based on part of the ALJ's analysis at Step Four of the sequential process. Specifically, based on a review of the record and the ALJ's decision, the court cannot say that the ALJ's decision to discount Roberts's credibility is supported by substantial evidence, and this decision impacts several steps of the sequential process. Therefore, the court addresses this issue first.

In evaluating subjective complaints, the United States Court of Appeals for the Fourth Circuit has stated that "the determination of whether a person is disabled by pain or other symptoms is a two-step process." Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). It appears that in this matter



only the second step is at issue,[3] during which the ALJ must expressly consider "the intensity and persistence of the claimant's [symptom] and the extent to which it affects her ability to work." Id. In making these determinations, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p. "[A]llegations concerning the intensity and persistence of pain or other symptoms may not be disregarded *solely* because they are not substantiated by objective medical evidence." Id. (emphasis added). "This is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work." Craig, 76 F.3d at 595. A claimant's subjective complaints "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the [symptoms] the claimant alleges she suffers." Id. The social security regulations inform claimants that in evaluating subjective complaints, the Commissioner will consider the following relevant factors:

   (i)    Your daily activities;
   (ii)   The location, duration, frequency, and intensity of your pain or other symptoms;
   (iii)  Precipitating and aggravating factors;
   (iv)   The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

---

[3] The first step requires there to "be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig, 76 F.3d at 594 (internal quotation omitted).



> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 416.929(c)(3).

In this case the ALJ found that Roberts's "statements concerning the intensity, persistence and limiting effects of [some of her alleged] symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 15.) In reaching this conclusion, the ALJ found that the treatment notes did not indicate the level of dysfunction alleged by Roberts. After summarizing some of Roberts's medical records from August 2010 through September 2011, the ALJ concluded the following with regard to Roberts's allegations of disabling neck pain:

> The claimant has been diagnosed as suffering from cervical degenerative disc disease and stenosis. Medical records, including diagnostic testing, confirm her diagnosis. However, medical [records] fail to indicate that the claimant ever complained of such severe and debilitating limitations to any treating physician. She was first seen concerning her neck pain during a consultative examination in August 2010. However, a physical examination conducted at this time found that the claimant had full range of motion of her cervical spine, and there was no tenderness to palpation of the neck. (Exhibit 4F). While she continued after her consultative examination to be treated by physicians for her neck pain, the claimant failed to undergo any excessive diagnostic testing or epidural injections. The medical records fail to show that surgery was ever suggested. While the claimant was referred to physical therapy, there is no indication that she ever attempted physical therapy.

(Tr. 16.) The ALJ further stated that

> [he] has considered both the claimant's testimony and the argument of the claimant's representative that the claimant is incapable of being employed at any job. However, a finding that the claimant is incapable of all work is not supported by the medical records or by her own testimony. The claimant completed a function report in June 2010, during which she stated that she has no problem with performing her own personal bathing and grooming. She stated that she takes care of her animals, and

Page 7 of 11



>performs housework such as cleaning the house, laundry, dishes, and taking the trash out. She stated that she went grocery shopping every other day, watched television, checked her email on the computer, and goes outside daily. (Exhibit 5E). At the hearing, the claimant testified that she can perform light household chores, and prepares simple meals. She can do the laundry, and drive a vehicle. Additionally, the claimant testified at the hearing that her pain is manageable with medication, further indicating that she is capable of employment. While she stated certain restrictions, such as the necessity to elevate her legs, and the need to lie down frequently, she apparently never reported such severe limitations to any treating physicians according to their treatment notes.

(Tr. 16-17.)

Roberts argues that the ALJ's decision with regard to her cervical spine is unsupported as it mischaracterized some of the evidence and failed to consider the entire record. Roberts challenges some of the reasons that the ALJ provided for discounting her credibility. Although the Commissioner appears to concede that at least one of the reasons given by the ALJ was poorly written and offers interpretations of some of the other reasons, upon careful review of the record, the court is persuaded that, as written, several of the ALJ's reasons are contradicted by the record and the remaining reasons are insufficient to render the ALJ's decision supported by substantial evidence. Specifically, Roberts points out that contrary to the ALJ's finding that the records do not indicate that Roberts ever complained of such severe and debilitating limitations to any treating physician, Dr. Oliverio's treatment records reveal that she consistently sought treatment between September 2010 and September 2011 for severe neck pain, paresthesias, and weakness, and Dr. Oliverio continuously ordered testing and adjusted her prescriptions. (See, e.g., 238-45, 283-84, 291-96, 300-01, 305-06, 309-13, 316-17.) Additionally, Roberts argues that the ALJ's finding that Roberts failed to undergo excessive diagnostic testing and epidural injections is unsupported considering that Roberts underwent numerous MRIs and x-rays from October 2010 through July 2011, which Roberts argues revealed deterioration of her cervical degenerative disc disease and

stenosis. (See, e.g., Tr. 256-57, 278-79, 288-90, 303-04, 342, 347-49.) Additionally, Roberts points out that when she underwent a cervical epidural injection in January 2011, it resulted in her being hospitalized for three days, and as a result she expressed her unwillingness to proceed with them again. (See, e.g., Tr. 258, 260-62, 266-77, 321.) Further, while the ALJ found there was no evidence Roberts ever attempted physical therapy, Roberts points to a medical record noting that she reported that she had previously attempted physical therapy several times a week for three weeks, but that it had exacerbated her symptoms. (Tr. 321.)

Accordingly, based on the foregoing, the court finds that the record in this matter belies several findings pertinent to the ALJ's credibility analysis. At the very least, the ALJ's failure to address or explain some of these apparent contradictions prevents the court from determining that the ALJ's decision to discount Roberts's credibility is supported by substantial evidence and consistent with controlling law.[4] Accordingly, while the court may not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]," Craig, 76 F.3d at 589, based on the record before the court, the court is constrained to remand this issue for further explanation and review of Roberts's credibility and continue with the sequential analysis, if necessary.[5] Furthermore, in light of the court's recommendation that this matter be remanded for further consideration, the court need not address Roberts's remaining issues, as they may be rendered moot on remand. See Boone v. Barnhart, 353

---

[4] The court also observes that all of Roberts's MRIs on her cervical spine post-date the opinions from the consultative examiner as well as the state agency medical reviewers.

[5] The court expresses no opinion as to whether further consideration the evidence discussed above in conjunction with the evidence already discussed by the ALJ should lead to a finding that Roberts's subjective complaints are credible. Analysis of this evidence may well not affect the ALJ's conclusion on this point. However, on this record, the court cannot say that the ALJ's apparent infirmities in his analysis of Roberts's subjective complaints are harmless.



F.3d 203, 211 n.19 (3d Cir.2003) (remanding on other grounds and declining to address claimant's additional arguments). Moreover, if necessary, Roberts may present her remaining arguments on remand.

### RECOMMENDATION

Based on the foregoing, the court recommends that the Commissioner's decision be reversed pursuant to sentence four of 42 U.S.C. § 405(g) and that the case be remanded to the Commissioner for further consideration as discussed above.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

May 16, 2014
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).